Our next case on the call of the docket is agenda number two case number one one four nine nine four n ray Shelby are a minor counsel for the appellant You May please the court assistant attorney general John Schleppenbach on behalf of the people of the state of Illinois Your honors the appellate courts decision in this case should be reversed and the sentence of the trial court reinstated for two separate and independent reasons First the case was moot before the appellate court and the public interest exception to mootness did not apply Second the trial court sentence was appropriate under the Illinois juvenile court act Turning first to the issue of mootness This court has previously emphasized that the existence of a real controversy is a prerequisite to the exercise of a court's jurisdiction Not a mere technicality Illinois courts here concrete disputes between parties. They don't just decide legal issues in a vacuum or issue advisory opinions And so this court has stated that an appeal is moot when intervening events have rendered it Impossible for the reviewing court to grant a factual relief the complaining party There's no real dispute that that is the case here Respondent is challenging only her sentence not her conviction and she has already served that sentence in fall Had already served that sentence in fall at the time. She was before the appellate court. So the case is moot Respondent argues and the appellate court accepted that a narrow exception to mootness the so-called public interest exception Applied and authorized the court to hear the case despite its mootness that exception Appropriately as an exception to a jurisdictional requirement is narrow and requires a clear showing of each of three elements Those elements are an issue presented in the case. That is of a public nature an authoritative determination on the issue being necessary to guide public officers in future cases and Third a likelihood that the issue will recur is the second element That is really the subject of the dispute here and in previous cases looking at whether there is a need for Whether there are conflicting decisions that evidence a genuine need on the part of Illinois judges for guidance on an issue in cases like the decision in in Ray Alfred HH from 2009 and Hernandez from 2010 and a variety of other cases this court has either relied on the existence of conflicting decisions as a reason for applying the public interest exception to mootness or Emphasized the lack of such decisions as a reason for declining to apply the exception now in this case respondent has not Identified conflicting decisions. There were no conflicting decisions before the appellate court and there are none here instead Respondent argues that there is a need for guidance in this case because in her view The trial court and the prosecutor got the law wrong and need a precedent from this court to guide their future efforts Now, of course, that's an argument that an appellant can and would make I think in any appeal Always an appellant believes that the court blow got it wrong and need some instruction or otherwise There would not be an appeal on that issue counsel. Yes in Christopher K. I Wrote a special concurrence. I don't know. I don't recall what who offered that decision and Whether anyone joined my special concurrence but what I said was that the existence of conflicting authority is not the test and and Is neither a necessary nor a sufficient condition to satisfy the public interest exception But accepting the assertion that the public interest exception to the mootness doctrine does apply Unless the law is in disarray Well, there are conflicting decisions how would a Moot issue of first impression ever be subject to review? Certainly your honor Well, there are first of all other exceptions to mootness that a court could invoke in order to hear one of those issues Should they apply the capable of repetition yet evading review exception the collateral consequences exception? So there are other ways that those issues could come before an appellate court or this court But additionally the doctrine of mootness is designed to keep a certain Certain breed of cases away from being determined because they are moot because they do not involve life controversies So it wouldn't be an absolute bar to having these cases but some cases will not be able to be heard that is how mootness works and I do I should stress that The existence of conflicting decisions is not necessarily the only way to show That there is a genuine need for guidance on the part of public officials and there have been other cases from this court that have Looked at other things such as the fact that you have an election official someone who is not expert in the law Asking for guidance on an issue or you have a legislator who doesn't necessarily Isn't isn't a lawyer perhaps doesn't necessarily know how something should be determined and that is the public official in need of guidance But judges have a way of telling Telling telling other courts when they need guidance and that is by Saying that they need guidance in opinions or by issuing by showing the court by issuing conflicting decisions that show Yes, there's a genuine need for guidance here So there are a variety of ways in which one could establish that there is a need for guidance. That's absolutely correct however One of the ways that the court has has looked at this in the past is through looking at conflicting precedent and that is a nice concrete objective way to prevent the this test from becoming simply a Subjective ad hoc way of deciding which new cases to hear section 1 4.1 provides An order of confinement entered as a result of violations of a court order must comply With the restrictions set forth in 5-4 10 and 5-501 both of which relates to How do the restrictions set forth in those sections relate to or affect an order of confinement well, I Don't have the provisions in front of me your honor But I believe that those are restrictions that deal with General requirements with regard to juvenile such as the sight and sound requirement that minors are not to be confined With adult offenders or within their sight and sound I think those those are the things that you were talking about And those would apply in in the non adjudic non pre adjudicatory stage that an offense a juvenile offender Whenever he or she is incarcerated is subject to those restrictions What role does the Liberty interests of a class of people And not being wrongfully incarcerated play in the analysis of whether court should apply the public interest exception Okay, well absolutely that that plays a role your honor and that goes to the first prong whether there is an interest that it Whether there is an issue that is of public importance and the people are not disputing that the first prong has been met here This is an issue that is of public importance. However, it's not an issue on which there's a demonstrated need for guidance Taking your Argument to the end and if all courts follow this court and do exactly the same thing we could never get the issue Is that correct? I don't I don't think so Your honor because again, there are other exceptions to mootness and there are other ways to demonstrate That there is a genuine need for guidance other than just the conflicting decisions But what respondent has pointed to in this case her subjective belief that the trial court needs guidance is not sufficient And to follow up briefly on the the merits issue There the statutory scheme under the Juvenile Court Act does Provide for the confinement of minors and there are several provisions that interact here And I'd just like to briefly lay them out before your honors I would first refer your honors to section 5-750 of the Juvenile Court Act Which broadly authorized and I'm talking about this statute as it existed at the time of respondents sentencing There have been some slight changes, but this is this is the way it was at the time It broadly authorized commitment of juveniles upon a finding of one of two things either one That the juveniles parents were either unfit or unable to care for them for reasons other than financial circumstances or two Alternatively that commitment was necessary to protect the public in this case It's the first finding that was made and importantly that section 5-750 did not contain any Restrictions on the use of commitment with juveniles other than the finding of one of those two One of those two findings now Respondent correctly points out that another provision of the Juvenile Court Act section 5-710 Exempts from the sentence of commitment those cases where a term of incarceration is not permitted by law For adults found guilty of the offense However, there's another provision which is one of the provisions that we've already been discussing which is section 1.4 Which in essence creates an exception to that exception for minors accused of violation of a court order And just to back up and there's a little bit of legislative history on this provision and its equivalent federal provision That I think is a is somewhat helpful in this case The the valid court order exception was added to the Illinois Juvenile Court Act in 1992 and the legislative record shows that it was a conscious effort on the part of Illinois state legislators to Conform what they were doing with the Illinois Juvenile Court Act to the federal regulations that govern when juvenile justice grants can be made to states and those are found at Federal regulations their history shows that this a federal valid court order exception Which is similar in contour to the Illinois exception was added in 1980 to give Juvenile court judges the ability to deal with chronic and habitual status offenders that Under the previous rule which had wholly barred the institutionalization of status offenders Judges and prosecutors had found themselves hamstrung because some offenders were coming before them Yes, initially on status offenses the sort of offenses like underage drinking or truancy that we generally think of as somewhat less serious But we're repeating those offenses because they knew in essence the court was without authority To escalate the punishment to impose any real consequences for the violation of its order you mentioned 1-4.1 So, how does it apply here? Because although Shelby did violate a court order at the time of the probation revocation She could not have been sentenced for that violation at the time of the initial sentence So which is required, you know, that's required under section 5-720 Yes Your honor, I believe there is an inherent conflict in the statute between 5-720 and 1-4.1 and In this case because as your honor has pointed out 720 seems to limit courts to any sentence that could originally have been imposed But 1-4.1 seems to contemplate the opposite that there can be Escalating punishment for violating a court order. I don't think necessarily that that can be Reconciled I do But there is there is repeal by implication and in this case it is 1-4.1 That is the latter provision that was passed by the legislature. It was passed as part of the 1992 amendments and Section in 720 that your honor is referring to predated that going back until at least 1987. So I Logically, it seems that what happened was when the legislator wasn't acting and attempting to put into force the valid court order exception That was in the federal act It was a repeal by implication that it Legislator might not necessarily have thought of all the other places in the act that might need a little pruning to go along with this statute But they did enact this and it is the later enactment and it should the state believes control in this case and This is really the sort of paradigmatic case that shows the true value of the value valid court order exception Because in this case respondent did initially come before the court on a status offense underage drinking Recognizing the substance abuse issues in the case the court immediately sent respondent to residential treatment But she left that treatment without completing it against the advice of the staff Despite this failure when the sentencing came up the court sentenced her to probation and gave her the opportunity to deal with her issues in the community stressing the importance of her receiving treatment and Complying with the court's order to refrain from drugs and alcohol But less than two months later two months into an 18 month probation sentence Respondent was back before the court having tested positive for marijuana and cocaine But again rather than immediately putting respondent in confinement the court decided to again emphasize the importance of treatment Respondent instead failed two more drug tests and when she came back before the court having not completed treatment having failed two more drug tests and having recently become pregnant the court determined that the only sentence that would help respondent to deal with her issues and Vindicate the court's order as well as protect respondent or unborn child was a sentence of commitment This is really exactly what the Valley Corridor exception was designed to address if you look at the legislative history of the federal enactment and The state let the state enactment was intended to mirror that act was this a probation revocation Proceeding or a contempt proceeding or does it and doesn't make any difference your honor? This was a probation revocation proceeding I know that the respondent has raised issues regarding contempt This was never denominated as a contempt proceeding. It was a probation revocation proceeding It was in the sentence imposed here was independently authorized by the Illinois juvenile court act So no recourse to the court's inherent contempt powers was required and the court did not denominate This is contempt. There was no contempt petition filed. No one ever thought of this as being a contempt proceeding However, if this were a contempt proceeding it is generally consistent with the restrictions that Illinois courts and other courts have imposed on contempt Obviously, it was not denominated as contempt However respondent received a variety of important procedural protections here such as the right to counsel She was provided with notice of the charges against her She was informed of her right to a trial her right to The burden of proof and she was warned of the full range of potential sentences Including commitment in this case. So if it were commitment, this is consistent with content with contempt But it I'm sorry if it were contempt, this is consistent with contempt, but it was not denominated as a contempt proceeding And I would also point out the trial court I the appellate court did acknowledge the existence of the valid corridor exception But it concluded that it was limited to the pre adjudicatory phase And I think there's a few reasons that that conclusion is not necessarily the best reading of the statute first Although the section that the appellate court focused on is contained in article 5 part 4 which deals with pre adjudicatory proceedings the articulation that I've referred the court to at section 1.4 point 1 or 1 dash 4.1 is Contained in article 1 the general provision section of the act and those provisions are as one might expect general they are intended to apply throughout the entire act and they include things like definitions like the policy section for the act and like the Exemptions from the scope of the act things like that don't make sense unless they apply throughout the act additionally The appellate court focused on the use of the word accused in the in the statute However, that's a word as people have pointed out in their opening brief at page 18 I've collected a few other Illinois statutes that use the word accused in the context that suggests it also includes one who has not merely Been accused but has been followed all the way through and has been Judicially determined to have engaged in the conduct at issue Since an adult could not be incarcerated for the offense that Shelby was adjudicated delinquent Yes, your honor. If the valid court order exception is not given effect in this case, then respondent was committed for underage drinking Which is not an offense than adult can be sentenced for as an adult is defined in the juvenile court act The adult is defined different but different ways other places, but as that provision is defined in the juvenile court act And so I would ask this court unless there are any further questions We the state would ask that this court vacate the decision of the appellate court and reinstate the trial court sentence in this case Thank you. Thank you Counsel for the appellate You May it please the court counsel My name is Jackie Bullard. I represent the minor respondent in this case on behalf of the office of the state appellate defender The legislature knows how to create a valid court order exception when it wants to The legislator created legislature created three express bans on the incarceration of status offense offenders The first is contained in article 1 which governs every other article of the juvenile court act that provision contains an exception Within article 5 which is governs a more narrow class of juvenile proceedings delinquency proceedings the legislature included a valid court order exception for Temporary detentions of minors during pretrial and pre-hearing proceedings The last ban on the incarceration of status offenders is it is contained in the sentencing provisions of the juvenile court act That absolute ban contains no exception for valid court orders There is a reason why the legislature drew a distinction because there are fundamental differences between detaining a minor pretrial versus post trial The first is the length of the detention When a minor is taken into custody pretrial or pre-hearing that minor has to appear before a judge within 40 days the judge has a very narrow very narrow constraints in terms of if he can order that minor to be Continued detention it has to be either to protect the safety of the public or a safety of the minor or To prevent the minor from running to make sure that the minor appears Furthermore after for any minor who is detained Trial for that minor is supposed to be held within 30 days of detention the normal 120 days speedy trial clock Shortens up to 30 days if the minor is detained and in the case of probation revocations that period is limited to 15 days In The case of sentencing courts are considering very different are weighing very different factors at the sentencing phase A court is not only looking at whether the minor and the public needs to be protected The court also has to weigh the rehabilitative potential of the minor this is where the court is responsible for crafting crafting an appropriate response and When it comes to sentencing rather than the very short detention periods that are absolutely necessary To keep individuals safe at the front end of the proceedings the potential incarceration Consequences for a minor at the back end are up to a year in the Department of Juvenile Justice We understand the first issue here is mootness, is it clear from the record how long she was held in custody? She got she the trial court awarded her 55 days total of time spent in detention before and that would have been four times She spent before During the initial proceedings and then time that she spent between the probation revocation But ultimately what I mean, I mean that we are debating the of course authority to detain her placement commitment Based upon the probation revocation. Do you have any sense of how how long that was? less than 55 days Yes, I I'm you know what I'm gonna ask you to clarify your question is I'm not sure I understand what you're asking I'm sorry, but I can I could check I'm just concerned. We're talking about the court ordered This 14 year old into custody based upon the courts finding of a violation of court order After she had failed to complete Drug and alcohol treatment and she came back. She was pregnant. Her parents have been found unfit She's 14 years old and the court placed her in custody do you know how many days she served a Total of 55 days on this offense I can't I don't know the answer to that question about how that was how that 55 day period was broken up She spent like we could we can infer infer that it was probably about 25 days because she was in custody For a complete month originally following the original incident She was in custody for 30 days and then the court released her for inpatient treatment Before the case proceeded to the original adjudication stuff the court gave her 55 days I think it's reasonable to infer that she was probably in custody for about 25 days before the last probation revocation if we accept accept your argument, are we Rendering the provision that reads except for a violation of a court order to meaningless no, absolutely not because that because the ban and exception in article 1 is a ban and exception that governs all juvenile court proceedings and for example in Under article 3 where minors are in need of supervision Truant minors typically fall under this under this place If you look at this article 1 exception that says you can hold essentially Truant minors in custody based on a violation of a valid court order Article 3 doesn't contain the equivalent of an article 5 Procedure for incarcerating a minor and a minor because ordinarily there's no incarceration in truancy proceedings So what this valid court order exception in article 1 really speaks to is creating a procedure by with by which under article 3 a trial judge could incarcerate a truant minor for behavior and Again, there has to be a vehicle There is no vehicle within article 2 to incarcerate minors And so that necessarily I think means contempt powers if article 1 if the article 1 exception is read as a recognition of trial courts inherent power under its contempt powers to order a minor in violation of a valid court order into custody and then you move to article 5 and article 5 Specifically addresses how we deal with delinquent minors It's not necessary and in that case what the what the delinquency provisions allow is it? Allows for this limited exception at the front end but an absolute ban when it comes to DJJ Excuse me DJJ commitments so I think that article 1 that the valid court order in article 1 can stand as a recognition of contempt powers and it can be applied in articles other than article 5 and Article 5 in article 5 the legislature has created these much more specific ways for handling Status offenders which makes sense because in article 5 that's really where the risk is going to arise for a status offender facing facing incarceration and It makes a lot of sense for the legislature to constrain the incarceration of status offenders under article 5 it's a question about legislative intent the State has argued that the legislative history reveal that discussion was had that the purpose of the statute was to conform with the federal statute in order to Ensure federal funding for juvenile programming and then They direct us to the actual language of the federal statute that includes this Exclusion for juveniles were charged or who have committed a violation of a valid Court order so pretty clearly language beyond merely pre adjudicatory Stage so the federal statute seems to be pretty clear that this would include a sentencing provision rather than When we talk about JJ DPA JJ DPA is a funding statute It's a grant statute that statute doesn't require doesn't impose an obligation on all states To apply the sentencing scheme that is set forth in JJ DPA what JJ DPA says? States if we're going to hand you a check for juvenile justice interests, we're going to create a floor That's what's created in JJ DPA is a floor It is the minimum amount of protection that a state has to provide To status offenders before the federal government will hand over Funding there is nothing in JJ DPA that prevents individual states from providing their status offenders With greater protections than those protections that are set forth in JJ DPA and the argument in this case is that's exactly what the Legislature has done when it's drawn this line between pre and post adjudication commitments of minors The commitment the conditions that a minor is placed in when it comes to a commitment to DJJ again It's not a temporary commitment. It is the deep end of the Illinois juvenile justice system It is a prison. These are facilities that are surrounded by razor wire. These are children who sleep in cells alongside some of the most violent juvenile offenders within this state including Juvenile offenders who have committed offenses so serious that what they were tried and convicted in juvenile court but aren't old enough yet to be sent to an adult prison and To take a child who's done nothing but engaged in behavior that would not be illegal But for her age and to place those children in these facilities with these deep-end children It is eminently reasonable on the part of the legislature not not to put a valid court order exception when it comes to DJJ commitments There are a broad array of options that are available to trial courts under the sentencing Options under the juvenile court act it begins with probation Shelby clearly wasn't successful on probation She was a danger to herself, but that doesn't mean that you jump immediately to a DJJ commitment There's this there's an intermediate option for trial courts under the juvenile court act and that is staff secure placements under section 740 it's residential placements is where is and so in this case This is the type of child that was probably tailor-made for a residential placement She's She had been in as she had done residential treatment for alcohol and drug abuse She did and I think yes, but In terms of sort of matters of common knowledge people who are dealing with addiction issues are rarely successful on their first go-around in This particular case the date that she left in April Corresponded with the anniversary of her violent sexual assault she was a victim and if you look at the Documents that are attached in the common law record There is an analysis and some treatment notes from her original placement at that original proceeding and she even told staff I I'm gonna have trouble in April. It's gonna be really difficult for me So the notion that a child self medicates and the notion that a child would rather self medicate because it makes her feel better now as opposed to going through the difficulty of treatment I Don't think that the trial court was necessarily correct and basically throwing this girl away to begin with Is that what the trial court said that he was doing was throwing her away? Or was did he say that he was placed here to have in? Custody treatment. Yeah, is that what he said? Yes, your honor and that's but that's not a fair That is my characterization of what happened to this child at this point because there was this option Available to the trial court for residential placement at a staff secure placement and to give her another And to give her another try and in any event regardless of what her behavior was the legislature has said in its statutory scheme You can't put children in DJJ You're gonna have to find if you need to confine them and they're not going to be able to and you're not going to be Able to place them at a staff secure placement Then you're gonna have to figure out something else to do. It's Children come into the juvenile justice system when when you look at their social investigation reports It's no accident that they wound up where they did These are children who have complex and often interrelated problems in terms of mental health issues trauma drug and alcohol abuse dysfunctional family situations These are not easy problems to deal with and they often will require a trial court to revisit a Three times it may require the court to take that extra step and try another residential placement But the court did have though did have other options at its disposal If the record show that those were presented In this particular case that the The fact that she had been placed at Gateway in Carbondale was available to the trial court And probation actually probation in this particular case when they when the probation officer who completed the social these supplemental step social investigation report that accompanied her resentencing following in the probation revocation Noted that there were community services available that she was able to access and the probation officer who completed the report Recommended that she be put replaced resentence to probation rather than being sent to the Department of Juvenile Justice. I Article 1 exception essentially swallows the rule anytime. There's a probation revocation if If this court accepts the notion that the article 1 exception is applicable in all Circumstances even in article 5 where there's an explicit ban and no exception It is that that this reading of the statute essentially swallows the rule any child who is who who is adjudicated delinquent for a status offense and The court would now be perfectly free to sentence those children to the Department of Juvenile Justice Even if in this particular case Shelby had engaged in illegal activity But under the state's the broad reading that the state is requesting You could have a child who was adjudicated delinquent for underage drinking violated a non-criminal Condition of his or her probation and the trial court would be free to sentence that child to DJJ under the state's reading of this Statute and again for any child facing probation who's been placed on probation for this offense It offense it effectually swallows this general ban That the legislature has repeated Again, and again and again a third time in the juvenile court act when it comes to incarcerating status offenders Yeah, I will touch briefly on the mootness issue I think that the state and I agree that That there's not there doesn't necessarily have to be a conflict and we agree on the rule We don't necessarily dispute or we both both agree that this is a question of public importance I would only like to touch very briefly on how very important this public question is at stake This is a state. This is an issue of taking children again who have committed no crime But for their age and placing them in the deep end system and facilities that look like prisons for period for months at a time And the ability and once a child is placed in DJJ The discretion for that release order is vested in the Prisoner Review Board at that point. So the child is really Is is is put in these defense facilities for a very long period of time? In terms of capable of well, let's let's move to the second prong Which is the one that we disagree on about whether there's a desirability for authoritative intervention This case absolutely highlights the problem with with with In instances where a single county is engaging in behavior that is clearly prohibited by statute If this court agrees with with with with the minor's interpretation of the statute There is this clear prohibition on that on the Commission on committing children to the Department of Juvenile Justice And if this if the appellate court hadn't reached the issue and if this court doesn't reach the issue There is nothing to stop Champaign County from continuing this practice of trying to incarcerate underage incarcerate status offenders Does this court have any further questions Then the minor would respectfully request that the This court from the judgment of the appellate court and prohibit the incarceration of status offenders in the Department of Juvenile Justice Thank you. Thank you The rebuttal mr. Bullard, excuse me, mr. Schleppenbach It is not What's that? My name is quite the mouthful. I I understand Just quickly on rebuttal your honors respondent began by acknowledging that the Valid court order exception in section 1 dash 4.1 applies to the entirety of the act But then took a step back and said oh, but it doesn't apply to say article 5 the part We're talking about here because it has its own mechanisms for dealing with status offender issues It either it applies throughout the act or it does not article 1 is the general provisions It is intended to apply throughout the act. It must the legislators intent must be given effect here then additionally, it doesn't make sense to limit the valid court order exception in the way that respondent and the Appellate court would suggest to just the pre adjudicatory phase In fact that turns our traditional notice subject notions of justice on their head It is pre trial detention that is suspect after a violation has been conclusively determined then Detention is the norm Defendants have greater liberty before they are conclusively determined to have committed an illegal act not after And so respondent would turn that on its head by saying well Respondent can be confined up until the court determines that she violated a valid court order But once that determination is made she must be released That doesn't make sense. It's not how our system traditionally works a Quickly on the on the idea with regard to the Juvenile Justice Act the federal JGDPA your honor correctly pointed out that it does refer to minors who are accused of or have been convicted of an act and Yes Respondent is correct that it does not preempt state law It is not intended to be a substantive requirement that applies to all states The legislative history behind the 1992 enactment shows that Illinois was attempting to conform To the requirements of that act it wanted to mirror what the the federal requirements were. So that's why that's relevant It's relevant to what the purpose of the legislature was here No one is arguing that that federal law directly applies here. It just informs our analysis of what the the state wanted I'd also like to point out that Respondent in this case did in fact engage in illegal behavior both her probation violations for marijuana and cocaine Those are still illegal substances And so this is exactly the sort of circumstance the VCO was designed to address where we have not just repeated violation of court's orders and repeated misconduct on the part of a youth but escalating treat misconduct that in fact begins to go into a legality and And Also based on the fact that respondents only served 55 days in this case that's a good illustration of why this Kate is moot case is moot and was moot before the appellate court and There are other ways that the court can reach moot issues There are other exceptions to mootness capable of repetition yet evading review It's important that this exception the public interest exception be narrowly construed in the way it was designed and the way it's typically been applied and so we would ask for both both because of the mootness of this case or alternatively because Respondents sentence was appropriate under the Juvenile Court Act. We would ask that this court Reverse the appellate court's decision. Thank you Thank you. Case number one one four nine nine four and ray Shelby are Minors taken under advisers agenda number two. Mr. Schleppenbach miss Bullard. We thank you for your arguments Thank you